UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 26-cv-21593-JB

MARIO GONZALES GONZALEZ,

        Petitioner,

v.

WARDEN, Krome Service Processing
Center, *et al.*,

        Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** comes before the Court upon Petitioner Mario Gonzales Gonzalez's Verified Petition for Writ of Habeas Corpus (the "Petition").  ECF No. [1].  Respondents filed a Return opposing the Petition, along with supporting documents.  ECF No. [7].  As directed by the Court, Respondents also filed a Notice advising the Court of Petitioner's intended removal date and the country to which Petitioner is to be removed.  ECF No. [9].  Petitioner filed a Reply.  ECF No. [10].  Pursuant to the Court's order, Respondents filed a Sur-Reply, an Amended Sur-Reply, and a Supplemental Declaration along with supporting documents.  ECF Nos. [12], [14], [17].  Petitioner also filed a response to Respondents' Sur-Replies.  ECF No. [15].  Upon due consideration of the parties' submissions, the pertinent portions of the record, and the applicable law, for the reasons explained below, the Petition is **DENIED**.

1

## I.   BACKGROUND

Petitioner is a Cuban citizen who has resided in the United States since June 1980.  ECF No. [7-1] ¶ 7.  Petitioner has a lengthy criminal history dating as far back as April 1985, and continuing through September 2005, and then again in March 2010, March 2020, and April 2022. *Id.* ¶¶ 8–12, 16–25.

In January 1998, Petitioner was issued a Notice to Appear charging him with inadmissibility under section 212(a)(2)(B) of the Immigration and Nationality Act ("INA") as an alien "convicted of 2 or more offenses . . . for which the aggregate sentences to confinement were 5 years or more . . . ." *Id.* ¶ 13; 8 U.S.C. § 1182(a)(2)(B). Removal proceedings were instituted against Petitioner and, on January 28, 1999, an immigration judge ordered Petitioner removed from the United States.  ECF No. [7-1] ¶ 14.  Although Petitioner was detained at that time, he was thereafter released from custody pursuant to an Order of Supervision dated April 27, 2015.  *Id.* ¶ 15; ECF No. [7-2].

On December 9, 2025, Petitioner was arrested by the Florida Highway Patrol during a traffic stop.  ECF No. [7-1] ¶ 26.  On December 15, 2025, Petitioner was transferred to the custody of the United States Immigration and Customs Enforcement ("ICE").  *Id.*; ECF No. [7-3].   Petitioner remains in detention.

On March 11, 2026, Petitioner filed the instant Petition.  ECF No. [1]. Petitioner, who is proceeding *pro se*, asserts four claims.  Count One alleges that Petitioner is in custody "in violation of the Constitution laws, or treaties of the United States," which the Court construes to mean that Petitioner's detention allegedly

violates the Due Process Clause of the Fifth Amendment. *Id*. at 6. Count Two alleges that Petitioner's "detention violates the due process clause of the Fifth Amendment" because "[the] only valid purpose for civil detention [is to] mitigate risk of flight [and] prevent danger to the community and [P]etitioner is not either one," which the Court construes to refer to Petitioner's detention without an individualized bond hearing. *Id*. Count Three alleges that Petitioner's detention violates due process based upon *Zadvydas v. Davis*, 533 U.S. 678 (2001), because it is not significantly likely that removal will occur in the reasonably foreseeable future. *Id*. Finally, Count Four alleges that "[i]mmigration detainees face severe hardship while incarcerated" because they are "held in lockdown facilities with limited freedom of movement and access to their families." *Id*. at 7. Petitioner requests that he be immediately released from custody. *Id*.

On March 16, 2026, a few days after he filed the Petition, ICE conducted an informal interview with Petitioner and issued him a Notice of Revocation of Release which revokes Petitioner's release pursuant to the April 2015 Order of Supervision because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." ECF Nos. [7-1] ¶ 28; [7-2]. To that end, in their Notice dated March 20, 2026, Respondents advise that "DHS intends to remove Petitioner from the United States to Mexico on the next charter flight to Mexico within the next 30 days." ECF No. [9-1] ¶ 34.

On the same date as the Notice of Revocation, Respondents filed their Response to the Petition. ECF No. [7]. Respondents argue that the Court lacks

3

jurisdiction based upon 8 U.S.C. § 1252(g).  Respondents further argue that Petitioner is being lawfully detained pursuant to 8 U.S.C. § 1231(a)(6), and his continued detention has not exceeded the period held presumptively reasonable in *Zadvydas*. *Id*. at 8–9.  Respondents also argue that Count Four of the Petition challenges the conditions of Petitioner's confinement, which is not cognizable in a habeas proceeding. *Id*. at 10.

Finally, Respondents argue that the Court lacks jurisdiction "[t]o the extent Petitioner argues that the revocation of his supervised release was unlawful" because such a claim is not within the scope of habeas relief.  ECF No. [7] at 5–7.  DHS did not revoke Petitioner's Order of Supervision until *after* he filed the Petition and thus, the Petition necessarily could not have raised such a claim.  In his Reply, Petitioner does assert that claim—namely, that the revocation of his supervised release was contrary to due process, the INA and its implementing regulations, as well as the Administrative Procedures Act.  ECF No. [10].  Petitioner also argues that there is no significant likelihood of removal in the reasonably foreseeable future because Respondents "ha[ve] failed to procure travel documents or effect Petitioner's removal to Cuba in the more than 24 years since the removal was ordered."  *Id*. at 8.

Pursuant to the Court's Order, Respondents filed a Sur-Reply and an Amended Sur-Reply.  ECF Nos. [12], [14].  Respondents argue that Petitioner cannot state a claim under *Zadvydas* because they "have explained their intention to remove Petitioner to Mexico, which is accepting aliens like Petitioner, Cuban nationals who are subject to final orders of removal, without travel documents" and "intend[ ] to

remove Petitioner from the United States to Mexico on the next charter flight to Mexico within the next 30 days." ECF No. [12] at 2–3. Respondents further argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(g) to review the revocation of Petitioner's Order of Supervision and, in any event, Respondents properly "exercised their authority to re-detain Petitioner for the purpose of executing his removal as authorized by 8 C.F.R. § 241.13(i)." *Id.* at 4.

Petitioner filed a Response to Respondents' Sur-Replies wherein he argues that "re-detention based solely [on] the general prospect of removal, absent a finding of risk of flight or danger to the community, is ultra vires of 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas*." ECF No. [15] at 2. Petitioner also argues removal is not significantly likely in the reasonably foreseeable future because "Respondents are yet to produce travel documents" or "concrete factual information about scheduled flights or repatriation agreements." *Id.*

## II.   ANALYSIS

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who shows that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

5

## A. **Jurisdiction**

Respondents argue that section 1252(g) precludes the Court from exercising jurisdiction.  ECF No. [7] at 5–6.  Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  The Supreme Court has narrowly interpreted Section 1252(g). *See Reno v. Am.- Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("In fact, what § 1252(g) says is much narrower. The provision applies only to three discrete actions that the Attorney General may take: [the] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'").  "1252(g) is not to be construed broadly as a 'zipper' clause applying to the full universe of deportation-related claims, but instead as applying narrowly to only the three 'discrete' governmental actions enumerated in that subsection." *Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 960 (11th Cir. 2015) (citing *A.A.D.C.*, 525 U.S. at 472–73); *see also Camarena v. Dir., Immigr. & Customs Enf.*, 988 F.3d 1268, 1272 (11th Cir. 2021).  Indeed, the Supreme Court in *Jennings v. Rodriguez* cautioned against interpreting "arising from" to mean anything more than the three district actions set forth in the statute.

Here, Petitioner's claim does not implicate the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders.   Rather,

6

Petitioner challenges the legality of his detention.  Such claim is reviewable.  *See Canal A Media Holding, LLC,* 964 F.3d at 1257–58 (claim was not barred by § 1252(g) where action did not fall into one of three categories as "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."); *see also Maldonado v. Olson,* No. 25-cv-3142, 2025 WL 2374411, at *6 (D. Minn. Aug. 15, 2025) (petitioner's due process challenge was not barred by § 1252(g) as it did not "challenge the actions of Respondents in commencing proceedings, adjudicating cases, or executing removal orders."); *Vazquez v. Feeley,* No. 25-cv-01542, 2025 WL 2676082, at *8 (D. Nev. Sept. 17, 2025) ("[B]ecause Petitioner challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of the 'three discrete events along the road to deportation' that § 1252(g) applies to."); *Leal-Hernandez v. Noem,* No. 25-cv-02428, 2025 WL 2430025, at *5 (D. Md. Aug. 24, 2025) ("Petition[er] mounts a challenge solely to his continued custody.  None of the cases the Government relies on pertain to cases in which a petitioner . . . pursued judicial review of his allegedly unconstitutional custody.  In accordance with Supreme Court precedent and the plain language of the text, § 1252(g) does not bar [jurisdiction]."); *Sanchez v. LaRose*, No. 25-cv-2396, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) ("Petitioner seeks only review of the legality of her detention, which does not require judicial intervention into the Attorney General's decisions to commence proceedings, adjudicate cases, and execute removal orders. . . . Adopting [the government's] interpretation of 8 U.S.C. § 1252(g) . . . would eliminate judicial review of immigration detainee's claims of unlawful detention[.]");

7

*Campos Leon v. Forestal*, No. 25-cv-01774, 2025 WL 2694763, at *1–2 (rejecting respondents' § 1252(g) argument and concluding that the court had jurisdiction to hear habeas petition challenging DHS' refusal to abide by the IJ's bond order).

With respect to the revocation of Petitioner's Order of Supervision, it is true that the Court does not have jurisdiction over the merits of the revocation decision. *See Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025) ("The decision to revoke Petitioner's OSUP, for the stated purpose of executing his removal order, clearly falls under the purview of § 1252(g)."). However, that is not Petitioner's claim. Petitioner challenges the manner in which Respondents revoked his Order of Supervision, and the Court has jurisdiction to review whether agency regulations and procedures were properly followed. *See Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014); *Fuentes v. Ripa*, No. 26-cv-134, 2026 WL 717982, at *2 (M.D. Fla. Mar. 16, 2026) ("The crux of Fuentes's claims is that ICE failed to comply with its regulations and due process when it revoked his OSUP. . . . Thus, the Court finds that [Section] 1252(g) does not bar Fuentes's claims."); *Barrios*, 2025 WL 2280485, at *5 (similar); *Lezama Garcia v. Miami Field Off. Dir.*, No. 25-cv-23169, 2026 WL 632351, at *4 (S.D. Fla. Mar. 6, 2026) (similar). Accordingly, the Court concludes that Section 1252(g) does not bar review of Petitioner's claim that the manner in which Respondents revoked his Order of Supervision was unlawful. In sum, section 1252(g) does not prevent this Court from exercising jurisdiction over the Petition.

8

### B. **The Revocation of Petitioner's Order of Supervision Was Lawful**

Petitioner argues that the manner in which Respondents revoked his Order of Supervision was *ultra vires*.  ECF No. [10].  In particular, Petitioner argues that Respondents did not properly revoke his Order of Supervision because it was not "revoked by the ICE Executive Associate Director . . . [n]or had the officer been delegated authority to revoke an order of supervision."  *Id*. at 5.  "The Executive Commissioner or district director must authorize the revocation of an OSUP pursuant to § 241.4(l)(2)." *Barrios*, 2025 WL 2280485, at *7 (citing § 241.4(l)(2)).  "The district director includes the Field Office Director or 'other official . . . who is delegated the function or authority.'" *Id*. (citing 8 C.F.R. § 1.2).  Notably, the governing regulations instruct that all references to the "district director in this section shall be deemed to include any person . . . designated in writing by the . . . district director to exercise powers under this section."  8 C.F.R. § 241.4(c)(4).

Respondents submit the "Delegation of Signature Authority" in effect at the time of Petitioner's Notice of Revocation which reflects that signature authority was delegated to Field Office Directors, and the Acting Field Office Director of the Miami Field Office in turn delegated signature authority to Supervisory Detention and Deportation Officers with respect to the Notice of Revocation of Release.  ECF No. [17-2].  Here, the Revocation Notice issued to Petitioner was signed by a Supervisory Detention and Deportation Officer, ECF No. [7-2] at 2, who avers that he "signed the Notice of Revocation of Release for Petitioner on behalf of the Field Office Director (FOD), pursuant to the written authority delegated to me as an SDDO by the Acting

9

FOD on February 12, 2026, which was the memorandum in effect at the time the revocation took place." ECF No. [17-1] ¶ 6. This is sufficient. Indeed, "Section 241.13 contains no rigid signature requirement limiting revocation authority to field office directors or other specific high-ranking officials." *Fernandez del Pino v. Warden of Alligator Alcatraz*, No. 26-cv-377, 2026 WL 820476, at *3 (M.D. Fla. Mar. 25, 2026).

Petitioner also argues that the Revocation Notice violated due process because "Respondents did not make findings that Petitioner is dangerous or unlikely to comply with [the] removal order, as required by statute" and did not "afford[ ] him and [sic] informal interview." ECF No. [10] at 5. The Court does not agree. As mentioned, Respondents revoked Petitioner's Order of Supervision pursuant to 8 C.F.R. § 241.13(i) because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." ECF No. [7-2]. Section 241.13(i) provides two reasons why an order of supervision can be revoked: either the noncitizen violated any conditions of his release or removal is significantly likely in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i). By its own terms, Section 241.13(i) does not require findings that the noncitizen is a danger to the community or unlikely to comply with his removal order. *Id.* Indeed, Petitioner does not cite any authority requiring these specific findings when revoking an Order of Supervision.

Petitioner's other arguments fare no better. The record reflects that Petitioner received an informal interview on the day the Revocation Notice was issued. ECF No. [7-1] ¶ 28. The record also reflects that Respondents are prepared to "remove

Petitioner from the United States to Mexico on the next charter flight to Mexico within the next 30 days." ECF No. [9-1] ¶ 34. Although the better practice might have been for Respondents to include that information in the Revocation Notice, thereby explaining the basis of their statement that there was now a significant likelihood of removal in the reasonably foreseeable future, on this record, and given that the Revocation Notice did put Petitioner on notice, albeit generally, of the basic rationale for revoking his supervision, the Court finds that Petitioner has not established that the revocation violated due process.

## C. **Petitioner's Detention Does Not Violate Due Process**

As stated earlier, a final removal order was entered against Petitioner in 1999. ECF No. [7-1] ¶ 14. Although Petitioner was released pursuant to an Order of Supervision in 2015, "[a]n order of supervision does not change an alien's immigration status—he maintains an unlawful immigration status and he remains subject to the final order of removal." *United States v. Chinchilla*, 987 F.3d 1303, 1309 (11th Cir. 2021). "In order to remove an unlawful alien subject to an order of supervision, immigration officials must first revoke the order of supervision . . . and must notify the alien of 'the reasons for revocation.'" *Id*. at 1310 (citations omitted). As explained above, Respondents did so here.[1]

---

[1] While the Order of Supervision was in effect, Petitioner was allowed to reside in the United States. *See Chinchilla*, 987 F.3d at 1312 ("[W]hile it is in effect, an order of supervision allows its holder, among other things, to reside and travel within the United States, possibly obtain legal employment here, and to receive certain federal benefits, i.e., it provides the alien with legal permission to remain (or, in the language of Form I-220B itself, 'to be at large') in the United States."). The Court recognizes that Petitioner's Order of Supervision was not revoked until March 16, 2026— nearly

Title 8 U.S.C. § 1231(a)(1) provides that, subject to certain exceptions, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," which is known as the removal period.  8 U.S.C. § 1231(a)(1).  During this 90-day removal period, the Government must detain the alien.  8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien.").  The government may detain an alien beyond the ninety-day removal period only for a length of time "reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

In *Zadvydas,* the Supreme Court found that it is "presumptively reasonable" to detain an alien awaiting removal for up to six months. 533 U.S. at 701. "After the 6-month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing." *Id*. at 680. Thus, to state a *Zadvydas* claim, the petitioner must show (1) "post-removal order detention in excess of six months" and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Here, Petitioner's current detention without a bond hearing is lawful given that he is subject to a final order of removal and his Order of Supervision has been

---

three months after he was taken into ICE custody.  *See* ECF No. [7-3] (reflecting immigration detention beginning on December 15, 2025).  Although the legality of Petitioner's detention between December 15, 2025 and March 16, 2026 might be less clear, Petitioner's continued detention since March 16, 2026 is lawful for the reasons explained above and denial of the Petition is still warranted.

revoked.  Further, Petitioner's *Zadvydas* claim fails because he was not detained for more than six months when he filed the Petition.  *See Akinwale*, 287 F.3d at 1052 ("This six-month period thus must have expired at the time [petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*.").  Even if Petitioner filed an amended petition now, his *Zadvydas* claim would still fail because Respondents have provided sworn testimony that "DHS intends to remove Petitioner from the United States to Mexico on the next charter flight to Mexico within the next 30 days." ECF No. [9-1] ¶ 34.  As such, there is a significant likelihood of removal in the reasonably foreseeable future, which defeats Petitioner's *Zadvydas* claim.

Accordingly, for the foregoing reasons, Counts One, Two, and Three of the Petition are without merit.

### D. Petitioner's Challenge to the Conditions of His Confinement Cannot Be Raised in a Habeas Petition.

In Count Four, Petitioner alleges that "[i]mmigration detainees face severe hardship while incarcerated . . . [because] they are held in lockdown facilities, with limited freedom of movement and access to their families."  ECF No. [1] at 7.  These claim concerns the conditions of Petitioner's confinement, rather than the *fact* of his confinement, and, thus, are outside the scope of habeas relief.  *See Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) ("Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law.").  Moreover, "release from imprisonment is not an available remedy for a conditions-of-confinement claim." *Id.*, 634 F. App'x at 778; *see also Gomez v. United States*, 899 F.2d 1124, 1126 (11th

Cir. 1990) ("The appropriate Eleventh Circuit relief from prison conditions . . . is to require the discontinuation of any improper practices . . . [it] does not include release from confinement."). Accordingly, Count Four of the Petition is dismissed without prejudice because a habeas petition is not the appropriate vehicle to raise this claim. Such a claim is properly brought, if at all, pursuant to 42 U.S.C. § 1983. *See Vaz*, 634 F. App'x at 780.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Counts One, Two, and Three of the Petition for Writ of Habeas Corpus, ECF No. [1], are **DENIED**.

2. Count Four of the Petition for Writ of Habeas Corpus, ECF No. [1], is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 1st day of August, 2026.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**

14